SARAH C. NEWMAN, Adm'x, v. D. E. DAVENPORT.

1. AGENT. *A person appointed by the governor as receiver is. When. Contracts.* A person appointed by the Governor as receiver of a railroad, under the Internal Improvement acts, is a public agent, and not liable individually on contracts made as such, where he has not pledged his own credit.

Cases cited: Powell v. Finch, 5 Yer., 446; Enloe v. Hall, 1 Hum., 303; Amison v. Ewing, 2 Cold., 366.

2. ATTORNEY AND CLIENT. *Fees. Contracts.* Where the relation of attorney and client exists, the burden of proof is upon the attorney, to show that the services were rendered, and the compensation reasonable. He is not permitted to stipulate for a benefit incommensurate with the service to be performed.

Cases cited: McMahan v. Smith, 6 Heis., 167; Planters Bank v. Hornberger, 4 Cold., 531.

3. CONTRACTS AGAINST PUBLIC POLICY. All contracts for services to be rendered in influencing public officials to grant to particular persons control of business operations of the government, are void as against public policy.

FROM WILLIAMSON.

Appeal from the Chancery Court of Williamson county.

No record can be found.

MALONE, Sp. J., delivered the opinion of the court.

Sarah C. Newman, as administratrix of her deceased husband, T. W. Newman, seeks in this case to recover of the defendant, D. E. Davenport, certain sums of

Newman *v.* Davenport.

money alleged to be due as compensation for professional services charged to have been rendered him by her· intestate.    Various items are set forth in complainant's bill, but all seem to have been abandoned by her except the four to be hereinafter noticed.

The chancellor was of opinion that complainant was entitled to recover for these four items, and decreed accordingly, but declined to allow interest.    The defendant appealed from the entire decree, and the complainant from so much of it as refused to allow her interest

The first of these items is a claim for compensation for services as a lawyer rendered by the intestate to the defendant as receiver of the Winchester & Alabama railroad.

It appears that the defendant, Davenport, was appointed by the governor as receiver, in behalf of the State, under the Internal Improvement acts, of the Winchester & Alabama railroad, at a salary of $2,400 per annum, and that, as he admits, T. W. Newman was employed by him, but he insists that no service was expected to be, and, in fact, none was rendered him as an individual, that, as an officer of the State in charge of the railroad, he employed counsel when its interest seemed to demand it, just as he employed clerks, engineers or firemen, that it was well understood that no personal liability was incurred by him. He states that he agreed as receiver to pay T. W. Newman, as attorney for the road, $750 per annum. This is the sum claimed in the bill and shown by several witnesses to have been claimed by Newman.

But the superintendent of the road proves that he himself employed Newman at a salary of $125 per month, placed his name upon the pay-roll regularly in the monthly estimate, and supposes he was paid. He proves further that Newman was to look to the trust fund alone. No proof whatever is made of services rendered by Newman to Davenport individually in this conversation. Besides, it seems unreasonable that a man should agree to pay over one-fourth of his salary for legal advice alone.

The court are therefore of opinion that the proof shows that by the contract Davenport did not assume any personal liability, that this must have been under-stood by Newman. And it may be added, Davenport, as receiver, was a public agent, *Erwin* v. *Davenport*, 9 Heis. 44, and not liable individually on contracts made as such, unless he had pledged his own credit. Wharton on Agency, sec. 513, and cases cited; *Powell* v. *Finch*, 5 Yer., 446; *Enloe* v. *Hall*, 1 Hum., 303; *Amison* v. *Ewing*, 2 Cold., 366; *Parks* v. *Ross*, 11 Howard, 362.

The seecond item is a charge for compensation for services as attorney rendered to Davenport, as receiver of the Manchester & McMinnville railroad.

The defense set up by defendant is the same relied on as against the first item, and, for reasons already given, must be held valid.

The third contested item is for a claim for $5,000, charged in the bill in the following language: "For assisting in procuring for Davenport a contract for grading, bridge building, etc., on the Huntingdon branch

of the Nashville and Northwestern railroad, he agreed to pay complainants, intestate, the sum of $5,000, which is still due, the intestate having performed the service as agreed upon."

It is a little singular that there is no statement in the bill nor suggestion in the proof as to the character of the services, for which such large compensation is claimed.

There is nothing tending to show that T. W. Newman had skill or experience as a contractor, or that his credit was pledged or in any way relied on, and it is difficult to see what service he could render in procuring the contract, unless he could by his skill aid him in shaping his bid, or by his credit aid him in making a satisfactory bond. But the claim is for legal services. None such have been proved, and, in the absence of proof, the court do not perceive what services a lawyer, as such, could render in procuring a contract to build a railroad. The proof relied on to establish the contract, consists exclusively of admissions of Davenport, alleged to have been made to two brothers of the deceased. But Davenport, who answered under oath, denied that there was any such contract or employment.

At the time that the contract was awarded to Davenport, D. B. Cliffe was receiver for the State on the road, and John V. Gould was the engineer in charge. They both say that Newman never approached them with respect to the contract, that he had nothing to do with it so far as they knew, and that the contract was awarded to Davenport because his was

the lowest bid and the best one. Besides, it is established that the bid was made October 18, 1868, and was accepted October 19, 1868, and that T. W. Newman, after having been confined to his room by sickness for some three or four weeks, died at home, at or near Winchester, on the 2d of October, 1868, just fifteen days before the bid was made, and seventeen before the contract was awarded. Singularly enough, however, Davenport himself speaks of having mentioned to T. W. Newman that the contract was awarded to him.

But if the contract were established to the satisfaction of the court it would be difficult to maintain its validity. Cliffe was a public officer letting out a contract for the State. It was clearly for the public interest that he should be influenced alone by the responsibility of the bidder and the character of his bid, and extraneous influence, by which a particular bidder might gain an advantage, would result in harm to the public; any contract, therefore, for the exercise of such influence, must be clearly void, tending as it would to introduce personal solicitation and personal influence in the procurement of contracts, and thus directly leading to inefficiency in the public service, and to unnecessary expenditures of the public fund.

In *Tool Company* v. *Norris,* Mr. Justice Field, delivering the opinion of the court, said: "It is sufficient to observe generally, all agreements, for pecuniary considerations, to control the business operations of the government, are void as against public policy,

without reference to the question whether improper means are contemplated as void in their execution." 2 Wall., 56.

The fourth and last item contested, is a claim for compensation for services, stated in the bill as follows: "For assisting in procuring the contract to build the railroad from McMinnville to Sparta, which intestate did under special contract with him. Davenport agreed to pay him $5,000.

In his answer, which is under oath and responsive to the bill on this point, Davenport expressly denies any such contract. His deposition, however, is taken, and therein he asserts that his answer is true, and that he makes it a part of his deposition. But he says that "Col. Taze W. Newman was employed by me and assisted me in procuring the contract for building the Southwestern road from McMinnville to Sparta." Of course it is impossible to reconcile these statements. The answer to the interrogatories was written by a notary public, and a blunder may have intervened, or it may possibly be an instance of reckless swearing. The two brothers of the deceased prove that Davenport admitted to them the contract. But he in his deposition positively denies that he ever made any such admission.

It may perhaps be that Davenport intended to deny the special contract to pay $5,000, but to admit a retainer without stipulation as to compensation.

Jacob Brown states that he was himself interested with Davenport in the contract, that the bid was in fact put in by him in Davenport's name; that New-

man was not present at the time the bid was made, nor when the contract was let to Davenport; that he never heard of Newman in connection with it; that so far as he knew Newman did nothing to procure it, that there was nothing Newman could have done to procure it as a mere lawyer, and that witness himself wrote the contract under the supervision of the engineer.

Now there is nothing in the proof to show, nor do counsel in their argument suggest what possible legitimate service Newman could, as a lawyer, have rendered to entitle him to receive such a fee. There certainly is no proof that any service was rendered in procuring the contract. It is indeed suggested that Newman was exceedingly well posted in the "Internal Improvement acts," and on the probable ups and downs of State bonds—but inasmuch as the contractors were not paid, nor expected to be paid in bonds, the relevency of the suggestion is not very clearly perceived.

It appears that when this alleged contract was made, Newman was, and for some time previous, had been Davenport's counsel in a matter of importance. The question then comes to this : After the relation of attorney and client has been established, can the attorney make another contract with the client for further services and recover upon it, however clearly proven, without showing the nature of the services, how they were rendered, and the reasonableness of the compensation stipulated for ? But this, if an open question anywhere, certainly is not in this State. It is quite

well established that in controversies between attorney and client, the law is severely exacting of the former, and applies rules much stricter than those which govern controversies between other parties. The onus is always upon the attorney to show that his contract is just and reasonable, and free from all exorbitancy of demand. He is not permitted to stipulate for a benefit incommensurate with the service to be performed. *McMahon* v. *Smith*, 6 Heis., 177. *Planters Bank* v. *Hornberger*, 4 Cold., 531. But he must show not only that the services were rendered, but that the compensation stipulated for was reasonable with reference to them.

If, then, it should be held that in this very doubtful case the weight of evidence as to the existence of the contract is in favor of the complainant, it must at the same time be held that she has failed not only to show that the compensation stipulated for was reasonable with reference to the services to be rendered, but even to show any services whatever were rendered.

The court are therefore of the opinion that the decree of the chancellor is erroneous and must be reversed, and the bill dismissed with costs.